IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. |
| | ) | |
| DIANE SHONTAE WILLIAMS, | ) | |
| individually and doing business as DREAMS | ) | |
| & MEMORIES PROFESSIONAL | ) | |
| PLANNING SERVICES, | ) | |
| | ) | |
| Defendant. | | |

## COMPLAINT FOR PERMANENT INJUNCTION

The United States of America, for its complaint against Diane Shontae Williams

and Dreams & Memories Professional Planning Services, alleges the following:

1.      This is a civil action brought by the United States under 26 U.S.C. §§ 7402,

7407, and 7408 to enjoin Diane Shontae Williams, individually and doing business as

Dreams & Memories Professional Planning Services, and anyone in active concert or

participation with them, from:

   a.  acting as federal tax return preparers or requesting, assisting in, or
       directing the preparation or filing of federal tax returns, amended
       returns, or other related documents or forms for any person or entity
       other than themselves;

   b.  preparing or assisting in preparing federal tax returns that they know
       or reasonably should know would result in an understatement of tax
       liability or the overstatement of federal tax refund(s) as penalized by
       26 U.S.C. § 6694;

1

c. owning, operating, managing, working in, investing in, providing capital or loans to, receiving fees or remuneration from, controlling, licensing, consulting with, or franchising a tax return preparation business;

d. training, instructing, teaching, and creating or providing cheat sheets, memoranda, directions, instructions, or manuals, pertaining to the preparation of federal tax returns;

e. maintaining, assigning, holding, using, or obtaining a Preparer Tax Identification Number ("PTIN") or an Electronic Filing Identification Number ("EFIN");

f. engaging in any other activity subject to penalty under 26 U.S.C. §§ 6694, 6695, 6701, or any other penalty provision in the Internal Revenue Code; and

g. engaging in any conduct that substantially interferes with the proper administration and enforcement of the internal revenue laws.

## **Authorization**

2.     This action has been requested and authorized by the Chief Counsel of the Internal Revenue Service ("IRS"), a delegate of the Secretary of the Treasury, and commenced at the direction of a delegate of the Attorney General of the United States, pursuant to 26 U.S.C. §§ 7402, 7407, and 7408.

## **Jurisdiction and Venue**

3.     This Court has jurisdiction of this action under 28 U.S.C. §§ 1340 and 1345 and 26 U.S.C. § 7402(a).

4.     Williams resides in Hazelwood, Missouri, in St. Louis County.

5.     Venue is proper in this Court under 28 U.S.C. § 1391(b)(1) because Williams resides in this judicial district and operates Dreams & Memories Professional Planning

2

Services within this judicial district, and a substantial part of the activities giving rise to this suit occurred within this judicial district.

### Williams's Tax Preparation Business

6.     Williams owns and operates Dreams & Memories Professional Planning Services, LLC ("D&M").

7.     As the sole owner of D&M, Williams maintains complete control of D&M.

8.     Williams conducts business through D&M.

9.     D&M's Articles of Organization, filed with the Missouri Secretary of State in June 2019, list the purpose of the business as event coordination, decorating, and planning.

10.     Since at least 2017, Williams has prepared federal income tax returns for compensation.

11.     Williams also uses D&M to prepare federal income tax returns for compensation.

12.     D&M's principal place of business is in the STL Partnership Building at 6439 Plymouth Avenue, Suite 125, in Saint Louis, Missouri.

13.     In addition to this office, Williams and/or D&M's customers have reported visiting other office locations for tax return preparation, including in Pagedale and Normandy, as well as Williams's home in Hazelwood.

14.     Williams's customers reported initially meeting her through friends or family or finding her on local websites and applications such as Nextdoor.

15.    Through at least March 2021, Williams advertised D&M's services on an individualized page at www.schedulicity.com.

16.    D&M's "schedulicity" website allowed potential customers to view the company's various services, including tax preparation services, and the costs of those services.

17.    D&M's "schedulicity" website allowed potential customers to book appointments for tax preparation services:



18.    According to D&M's "schedulicity" website, Williams offers both face-to-face appointments and drop off services for tax return preparation.

19.    D&M's "schedulicity" website also highlighted that Williams's tax preparation services are available year-round and that she would "research the maximum refund due to you."

20.    Anyone who prepares or assists in preparing federal tax returns for compensation is required to have a valid Preparer Tax Identification Number ("PTIN") assigned by the IRS.

21.     A PTIN is used to identify an individual tax return preparer on the customers' tax returns, and the IRS maintains a database of return preparers and their PTINs.

22.     Paid tax return preparers are required to identify themselves as the preparer on all federal tax returns that they prepare for compensation by signing their name and reporting their PTIN on each return. *See* 26 U.S.C. § 6109.

23.     The IRS has no record of Williams applying for a PTIN.

24.     Williams has not obtained a PTIN.

25.     Williams does not identify herself as the paid preparer on the federal income tax returns that she prepares.

26.     Williams does not sign the federal income tax returns that she prepares.

27.     The IRS identified a computer IP address that was repeatedly used to transmit federal income tax returns to the IRS.

28.     The IRS interviewed one of the taxpayers whose federal income tax return was transmitted from the IP address described in paragraph 27 above and the taxpayer identified Williams as their paid tax return preparer.

29.     The IRS then identified additional customers by looking at the IP address established as belonging to Williams and used to transmit her customers' federal income tax returns.

30.     The following number of tax returns were identified as originating from the IP address attributable to Williams:

| Tax Year | Return Type | Total # of Returns |
|----------|-------------|--------------------|
| 2021 | 1040 | 264 |
| 2020 | 1040 | 317 |
| 2019 | 1040 | 259 |
| 2018 | 1040 | 338 |
| 2017 | 1040 | 261 |
| **Total # Filed From 2017 to 2021** | | **1,439** |

31.     As part of an investigation into Williams's tax preparation practices, the IRS interviewed 32 taxpayers whose federal income tax returns originated from Williams's known IP addresses and were electronically filed with the IRS between 2017 and 2021.

32.     Of the 32 taxpayers interviewed, 26 individuals confirmed that they paid Williams and/or D&M to prepare federal income tax returns on their behalf between 2017 and 2021.

33.     The IRS specifically reviewed the tax year 2019 federal income tax returns that Williams prepared on behalf of each of the aforementioned 26 customers during their interviews with the IRS.

34.     Of the 26 federal income tax returns reviewed, 19 returns contained fictitious businesses, inflated expenses, bogus or improperly claimed deductions and credits, or a combination of these, requiring an adjustment to the customer's tax liability.

35.     Accordingly, 73% of the federal income tax returns transmitted from Williams's IP addresses underreported the tax liability of Williams's customers.

6

36.    The total tax loss of the 19 income tax returns was $48,021 (an average of a $2,527 tax loss per return).

37.    Williams generally charges her customers between $120 and $250 to prepare their individual federal income tax returns.

38.    In August 2020, the IRS wrote to Williams to inform her of its investigation into her tax return preparation practices.

39.    The written request sought a list of her customers and copies of tax returns that she prepared in 2018, 2019, and 2020.

40.    The written request also informed Williams that the IRS would be contacting her customers to discuss the returns that she prepared.

41.    Williams did not respond to the IRS's written request.

42.    One week after the IRS's written request was delivered to Williams's home, the IRS called Williams for an interview.

43.    During that call, Williams identified herself but did not agree to be interviewed and ended the call.

44.    After Williams was notified of the IRS's investigation, she continued to prepare federal income tax returns for paying customers, filing at least 264 federal income tax returns in 2021 and at least 159 federal income tax returns in 2022.

**Schemes Williams Employs**

45.    Based on the statements of Williams's paying customers, Williams:

a.  prepares IRS Form Schedule C claiming fictitious self-employment businesses without the customers' knowledge;

7

b. inflates or falsifies self-employment expenses on IRS Form Schedule C to offset both real and fictitious self-employment income;

c. falsely claims bogus Residential Energy Credits;

d. fabricates household employee income that falsely qualifies customers for higher tax credits; and

e. invents itemized deductions like unreimbursed business expenses and charitable contributions.

46.    Moreover, Williams fails to identify herself as a paid preparer on any federal income tax returns that she prepares and files on behalf of her customers.

**Fabricated Schedule C Business Expenses**

47.    Individual taxpayers who operate a business as a sole proprietorship must report the business's income and expenses on a Schedule C (Profit or Loss from Business – Sole Proprietorship) that is filed as part of the taxpayer's Form 1040. The net figure reported on a Schedule C, whether a profit or a loss, is a component of the taxpayer's adjusted gross income ("AGI").

48.    Williams understates her customers' AGI by fabricating or inflating losses claimed on a Schedule C filed with her customers' federal income tax returns.

49.    Often, Williams prepares a Schedule C for customers that she knows do not own or operate a business.

50.    Accordingly, Williams prepares federal income tax returns reporting non-existent businesses on bogus Schedule C forms.

8

51.     These practices fraudulently reduce the amount of taxable income that Williams reports on customers' tax returns. This decreases the amount of tax that Williams reports the customers owe, or increases the amount of the refund claimed on customers' tax returns.

52.     The reduction in tax also leads to bogus refund claims.

**Customer 1**

53.     For example, Williams prepared the 2019 federal income tax return of Customer 1 of St. Charles, Missouri.

54.     During 2019, Customer 1 worked as the manager of a hospital group and received wages for doing this work.

55.     On the Schedule C attached to the 2019 tax return, Williams falsely reported that Customer 1 owned a "home care" business through which Customer 1 purportedly had no sales and received no gross receipts, but incurred business expenses of $6,800 for supplies and $652 for utilities, resulting in a $7,452 business loss.

56.     Customer 1 did not own a "home care" business, did not tell Williams that she owned a business, did not provide these amounts to Williams, and does not know why Williams reported it on Customer 1's 2019 federal income tax return.

57.     By reporting a phony $7,452 business loss, along with falsely claiming a Residential Energy Credit, discussed in paragraphs 140 through 142, *infra*, Williams claimed an overstated refund of $5,065 on Customer 1's 2019 federal income tax return.

58.     Williams also prepared Customer 1's 2020 federal income tax return.

59.     During 2020, Customer 1 worked as the manager of a hospital group and received wages for doing this work.

60.     On the Schedule C attached to Customer 1's 2020 tax return, Williams falsely reported that Customer 1 owned a "home care" business through which Customer 1 purportedly had no sales and received no gross receipts, but incurred expenses totaling $25,409, including $5,534 for car and truck expenses (for purportedly driving 9,625 business miles), $7,200 for renting business property, $7,500 for supplies, $1,500 for travel, $250 for deductible meals, and $3,425 for utilities, resulting in a $25,409 business loss.

61.     Customer 1 did not operate a "home care" business, did not tell Williams that she owned a business, did not provide these amounts to Williams, and does not know why Williams reported this information on her 2020 federal income tax return.

62.     By reporting a phony $25,409 business loss, along with falsely claiming the Residential Energy Credit, discussed in paragraphs 144 through 149, *infra*, Williams claimed a bogus refund of $4,325 on Customer 1's 2020 federal income tax return.

### Customer 2

63.     Williams prepared the 2019 and 2020 federal income tax returns of Customer 2 of St. Louis, Missouri.

64.     During 2019, Customer 2 worked as healthcare worker and received wages for doing this job.

65. When having the 2019 tax return prepared, the only information that Customer 2 provided to Williams was her W-2 forms showing the wages she received from her employer.

66. On the Schedule C attached to Customer 2's 2019 tax return, Williams falsely reported that Customer 2 owned a "home health care" business through which Customer 2 purportedly received $5,500 in gross receipts and incurred expenses totaling $15,327.

67. The reported bogus expenses included $3,306 for car and truck expenses (for purportedly driving 5,700 business miles), $4,648 for renting business property, $2,773 for supplies, $2,500 for travel, $800 for deductible meals, and $1,300 for utilities, resulting in a reported $9,827 business loss.

68. Customer 2 did not own a "home health care" business, did not tell Williams that she owned a business, did not provide these amounts to Williams, and did not know that Williams reported this information related to a non-existent business on her 2019 federal income tax return.

69. By reporting a phony $9,827 business loss, Williams claimed a bogus refund of $3,760 on Customer 2's 2019 federal income tax return.

70. In 2020, Customer 2 worked as healthcare worker and received wages for doing this job.

71. On the Schedule C attached to Customer 2's 2020 tax return, Williams falsely reported that Customer 2 owned a "home health care" business through which Customer 2 purportedly had no sales and received no gross receipts, but incurred expenses totaling $5,823.

11

72.     The reported bogus expenses included $575 for car and truck expenses (for purportedly driving 1,000 business miles), $4,648 for renting business property, and $600 for utilities, and resulted in a reported $5,823 business loss.

73.     Customer 2 did not own a "home health care" business, did not tell Williams that she owned a business, did not provide these amounts to Williams, and did not know that Williams reported this information related to a non-existent business on her 2020 federal income tax return.

74.     By reporting a phony $5,823 business loss, Williams claimed a bogus refund of $2,993 on Customer 2's 2020 federal income tax return.

**Customer 3**

75.     Williams prepared the 2018 federal income tax return of Customer 3 of Maryland Heights, Missouri.

76.     Customer 3 dropped of her tax information at Williams's office and paid Williams and/or D&M $150 in cash to prepare her 2018 federal income tax return.

77.     On the Schedule C attached to the 2018 tax return, Williams falsely reported that Customer 3 owned a "home health care" business, through which Customer 3 purportedly had no sales and received no gross receipts, but incurred expenses totaling $12,402.

78.     The reported bogus expenses included $150 for legal and professional services, $3,500 for supplies, $750 for deductible meals, and $8,002 for utilities, and resulted in a reported $12,402 business loss.

12

79.     Customer 3 did not have a "home health care" business, did not know what these business expenses could represent, and did not know that Williams reported this information related to a non-existent business on her 2018 federal income tax return.

80.     By reporting a phony $12,402 business loss, Williams claimed a bogus refund of $4,555 on the 2018 federal income tax return of Customer 3.

81.     Williams also prepared Customer 3's 2019 federal income tax return.

82.     On the Schedule C attached to the 2019 tax return, Williams falsely reported that Customer 3 owned a "home health care" business, through which Customer 3 purportedly had no sales and received no gross receipts, but incurred expenses totaling $9,527.

83.     The reported bogus expenses included $150 for legal and professional services, $3,500 for supplies, $750 for deductible meals, and $5,127 for utilities, resulting in a reported business loss of $9,527.

84.     Customer 3 did not have a "home health care" business, did not know what these business expenses could represent, and did not know that Williams reported this information related to a non-existent business on her 2019 federal income tax return.

85.     By reporting a phony $9,527 business loss, Williams claimed a bogus refund of $2,546 on the 2019 federal income tax return of Customer 3.

**Customer 4**

86.     Williams assisted Customer 4 in the preparation of their 2019 federal income tax return.

87.     Williams emailed Customer 4 a website link to D&M's "schedulicity" website, which is how Customer 4 scheduled her 2019 tax preparation.

88.     To prepare the return, Customer 4 sat next to Williams at Williams's computer and typed her basic information into Turbo Tax while Williams guided Customer 4 through the steps.

89.     When Customer 4 was finished entering her basic information, Williams took the computer from Customer 4 and asked Customer 4 follow-up questions before Williams—not Customer 4—finished preparing Customer 4's tax return.

90.     Customer 4 paid Williams and/or D&M $230 to assist in the preparation of her federal and state income tax returns for 2019.

91.     During 2019, Customer 4 worked as an employee, earning wages from two different companies.

92.     Williams asked Customer 4 if she worked from home and had to pay for her own supplies, and Customer 4 told Williams that she did have to pay for paper and printing.

93.     When Williams asked Customer 4 about work travel, Customer 4 informed Williams that she did not travel and only incurred commuting expenses.

94.     Customer 4 was not self-employed at any point during the year.

95.     On the Schedule C attached to the 2019 tax return, Williams falsely reported that Customer 4 owned a business working as an IT contractor, through which Customer 4 purportedly had no sales and received no gross receipts, but incurred expenses totaling $15,967.

96.     The reported bogus expenses included $8,000 in returns and allowances, $725 in office expenses, $6,242 for travel, $350 for deductible meals, and $650 for utilities, and resulted in a reported $15,967 business loss.

97.     Customer 4 was not self-employed, did not incur these reported expenses, did not provide documentation of these amounts to Williams, did not know what these business expenses could represent, and did not know that Williams reported this information related to a non-existent business on her 2019 federal income tax return.

98.     By reporting a phony $15,967 business loss, Williams claimed a bogus refund of $2,858 on the 2019 federal income tax return of Customer 4.

**Customer 5**

99.     Williams prepared the 2019 federal income tax return of Customer 5 of St. Louis, Missouri.

100.    Customer 5 paid Williams and/or D&M $250 to prepare her 2019 federal income tax return.

101.    Customer 5 worked in the professional home healthcare business during 2019 earning wages and received W-2 forms from doing this work.

102.    In addition to her W-2 employment, Customer 5 also operated her own part-time business selling children's clothing.

103.    To operate her clothing business, Customer 5 incurred expenses for inventory, bags, and business cards.

104.    Customer 5 recorded her income and expenses in a logbook, which she gave to Williams for the preparation of her 2019 federal income tax return.

105.    Williams also asked Customer 5 to record her business income and expenses on a separate form for her.

106.    On the Schedule C attached to Customer 5's 2019 tax return, Williams reported that Customer 5 earned $3,566 from her clothing business and spent $13,085 on business expenses, resulting in a business loss of $9,519.

107.    To inflate Customer 5's business expenses, Williams falsely reported that Customer 5 spent $3,542 to rent business property and $2,145 on business utilities.

108.    Customer 5 did not rent business property in 2019, did not have any rent or utility expenses related to her business that year, and did not report these expenses to Williams to include on her 2019 federal income tax return.

109.    Williams falsely inflated Customer 5's business expenses by $5,687, resulting in a $9,519 business loss and contributing to an inflated refund of $7,289 on the 2019 federal income tax return of Customer 5.

**Customer 6**

110.    Williams prepared the 2017, 2018, and 2019 federal income tax returns of Customer 6 of Florissant, Missouri.

111.    Customer 6 paid Williams and/or D&M around $200 to $225 to prepare each federal income tax return.

112.    On the Schedule C attached to the 2017 federal income tax return, Williams falsely reported that Customer 6 owned a "home remodeling" business, through which Customer 6 purportedly had no sales and received no gross receipts, but incurred expenses totaling $19,469.

16

113.    The reported bogus expenses included $6,000 in contract labor, $9,000 in repairs and maintenance, $3,000 in supplies, and $1,469 for utilities, and resulted in a reported $19,469 business loss.

114.    Customer 6 was not self-employed, did not incur these reported expenses, did not provide documentation of these amounts to Williams, did not know what these business expenses could represent, and did not know that Williams reported this information related to a non-existent business on her 2017 federal income tax return.

115.    By reporting phony business losses, Williams claimed a bogus refund of $5,893 on Customer 6's federal income tax returns for 2017.

116.    In preparing Customer 6's 2018 federal income tax return, Williams again attached a Form Schedule C, falsely reporting that Customer 6 owned a "home remodeling" business, through which Customer 6 purportedly had no sales and received no gross receipts, but incurred expenses totaling $14,438.

117.    The reported bogus expenses included $6,000 in contract labor, $2,500 in repairs and maintenance, $3,000 in supplies, and $2,938 for utilities, and resulted in a reported $14,438 business loss.

118.    Customer 6 was not self-employed, did not incur these reported expenses, did not provide documentation of these amounts to Williams, did not know what these business expenses could represent, and did not know that Williams reported this information related to a non-existent business on her 2018 federal income tax return.

119.    By reporting a phony business loss, Williams claimed a bogus refund of $843 on Customer 6's federal income tax return for 2018.

17

120.     In preparing Customer 6's 2019 federal income tax return, Williams again attached a Form Schedule C, falsely reporting that Customer 6 owned a "home remodeling" business, through which Customer 6 purportedly had no sales and received no gross receipts, but incurred expenses totaling $16,082.

121.     The reported bogus expenses included $2,030 in vehicle expenses, $500 in contract labor, $2,500 in repairs and maintenance, $3,000 in supplies, $3,100 in travel, $500 in deductible meals and entertainment, and $4,452 for utilities, and resulted in a reported $16,082 business loss.

122.     Customer 6 was not self-employed, did not incur these reported expenses, did not provide documentation of these amounts to Williams, did not know what these business expenses could represent, and did not know that Williams reported this information related to a non-existent business on her 2019 federal income tax return.

123.     By reporting a phony business loss, Williams claimed a bogus refund of $1,524 on Customer 6's federal income tax return for 2019.

**Customer 7**

124.     Williams prepared the 2017, 2018, and 2019 federal income tax returns of Customer 7 of Chesterfield, Missouri.

125.     Customer 7 provided Williams with the W-2 forms he received from his employer.

126.     Customer 7 paid Williams and/or D&M between $150 and $200 to prepare his federal income tax return each year.

18

127.    On the Schedule C attached to the 2017 federal income tax return, Williams falsely reported that Customer 7 owned a "private duty nursing" business, through which Customer 7 purportedly had no sales and received no gross receipts, but incurred expenses and lost $11,632.

128.    Customer 7 was not self-employed, did not incur these reported expenses, did not provide documentation of these amounts to Williams, did not know what these business expenses could represent, and did not know that Williams reported this information related to a non-existent business on his 2017 federal income tax return.

129.    By reporting a phony $11,632 business loss for 2017, along with fabricated expenses claimed on a Form Schedule A attached to the tax return, discussed in paragraphs 199 through 201, *infra*, Williams claimed a bogus refund of $14,255 on the 2017 tax return of Customer 7.

130.    In preparing Customer 7's 2018 federal income tax return, Williams again attached a Form Schedule C, falsely reporting that Customer 7 owned a "private duty nursing" business, through which Customer 7 purportedly had no sales and received no gross receipts, but incurred expenses and lost $13,709.

131.    Customer 7 was not self-employed, did not incur these reported expenses, did not provide documentation of these amounts to Williams, did not know what these business expenses could represent, and did not know that Williams reported this information related to a non-existent business on his 2018 federal income tax return.

132.    By reporting a phony $13,709 business loss for 2018, along with fabricated expenses claimed on a Form Schedule A attached to the tax return, discussed in paragraphs

203 through 205, *infra*, Williams claimed a bogus refund of $8,398 on the 2018 tax return of Customer 7.

133. On the Schedule C attached to the 2019 federal income tax return, Williams falsely reported that Customer 7 earned $4,500 from the fictitious "private duty nursing" business and incurred expenses totaling $17,398, resulting in a $12,898 business loss.

134. Customer 7 was not self-employed, did not incur these reported expenses, did not provide documentation of these amounts to Williams, did not know what these business expenses could represent, and did not know that Williams reported this information related to a non-existent business on his 2019 federal income tax return.

135. By reporting a phony $12,898 business loss for 2019, along with fabricated expenses claimed on a Form Schedule A attached to the tax return, discussed in paragraphs 207 through 211, *infra*, Williams claimed a bogus refund of $9,591 on the 2019 tax return of Customer 7.

**Erroneous Residential Energy Credit Claims**

136. In addition to fictitious Schedule Cs, Williams prepares tax returns that falsely claim the Residential Energy Credit.

137. Taxpayers may be eligible for this credit if they made qualified energy saving improvements to their home during the tax year.

138. The Residential Energy Credit allows a tax break for certain energy-efficient expenditures. The amount of the credit depends on the type of expenditure. The most favorable rates are available for solar electric property, solar water heaters, small wind turbines, geothermal heat pumps, and fuel cell property, as reflected on IRS Form 5695.

For property placed in service between December 31, 2016, and January 1, 2020, a taxpayer is entitled to a credit of up to 30 percent of the cost of expenditures that fit into these categories. Other types of energy-efficient expenditures are also eligible for the credit, but at reduced amounts.

139.    Although there are changes to the formula for calculating the credit for property placed into service in 2020 or later, the credit remains available and susceptible to abuse by unscrupulous return preparers.

**Customer 1**

140.    For example, on Customer 1's 2019 federal tax return, Williams falsely reported that Customer 1 paid $7,883 to install insulation material specifically designed to reduce heat loss or gain and other qualified energy efficiency improvements related to metal or asphalt roof.

141.    Customer 1 did not install installation in 2019 and did not tell Williams that she installed installation in 2019.

142.    The false claim qualified Customer 1 for a $500 tax credit on her 2019 federal income tax return.

143.    By falsely claiming the Residential Energy Credit, along with reporting a phony $7,452 business loss, discussed in paragraphs 53 through 56, *supra*, Williams falsely claimed a refund of $5,065 on Customer 1's 2019 federal income tax return.

144.    While preparing Customer 1's 2020 tax return, Williams asked Customer 1 about home improvements she made and the cost of those improvements.

145.    Customer 1 told Williams that in 2020 she purchased an air conditioner and a regular asphalt roof costing $10,000.

146.    On Customer 1's 2020 federal income tax return, Williams falsely reported that Customer 1 paid $7,420 during 2020 to install qualified solar water heating in her home.

147.    Customer 1 did not purchase or install a solar-powered water heater in 2020.

148.    Customer 1 did not provide Williams with documentation of solar purchases or any other home improvement purchases for 2020.

149.    The claimed expense qualified Customer 1 for a $1,929 tax credit on her 2020 tax return.

150.    By falsely claiming the Residential Energy Credit, along with reporting a phony $25,409 business loss, discussed in paragraphs 58 through 61, *supra*, Williams falsely claimed a refund of $4,325 on Customer 1's 2020 federal income tax return.

**Customer 8**

151.    On Customer 8's 2019 federal income tax return, Williams falsely reported that Customer 8 paid $3,800 for qualified solar water heating and $8,000 for qualified energy efficiency improvements pertaining to a metal or asphalt roof meeting the Energy Star program requirements.

152.    Williams prepared Customer 8's 2019 federal income tax return at the business location of D&M.

153.    Customer 8 provided Williams with his receipts for home improvements, including for a new roof, concrete in the backyard, and a new fence.

22

154.    Customer 8 did not purchase property for solar water heating and does not know why Williams included this on his 2019 federal income tax return.

155.    The false claim qualified Customer 8 for a $1,640 tax credit on his 2019 federal income tax return.

156.    By falsely claiming the Residential Energy Credit, Williams falsely claimed a refund of $4,301 on Customer 8's 2019 federal income tax return

157.    On Customer 8's 2020 federal income tax return, Williams falsely reported that Customer 8 paid $7,700 for qualified solar water heating.

158.    Williams prepared Customer 8's 2020 federal income tax return at the business location for D&M.

159.    Customer 8 did not purchase or install any property with solar-heating elements during 2020.

160.    Customer 8 does not know why Williams claimed the Residential Energy Credit on his 2020 tax return.

161.    The false claim qualified Customer 8 for a $2,002 tax credit on his 2020 federal income tax return.

162.    By falsely claiming the Residential Energy Credit, Williams falsely claimed a refund of $5,248 on Customer 8's 2020 federal income tax return.

**Customer 9**

163.    On Customer 9's 2019 federal income tax return, Williams falsely reported that Customer 9 paid $7,025 for solar electric energy-saving improvements.

164.    The false claim qualified Customer 9 for a $2,258 tax credit on his 2019 tax return.

165.    Customer 9 did not make any energy saving improvements on his home in 2019, did not discuss solar energy saving improvements with Williams, and did not provide her with any documentation of solar energy improvements.

166.    When Customer 9 picked up his completed 2019 federal income tax return, Williams went over the return with Customer 9 and provided Customer 9 a copy of the completed tax return.

167.    The copy of Customer 9's 2019 tax return that Williams gave Customer 9 did not include the IRS Form 5695 which showed the Residential Energy Credit.

168.    Customer 9 does not know why Williams claimed the Residential Energy Credit on his tax return.

169.    By falsely claiming the Residential Energy Credit, Williams claimed a bogus refund of $1,253 on Customer 9's 2019 federal income tax return.

**Household Help Scheme**

170.    Another scheme that Williams employs is to falsely claim household employee income ("HSH") on customers' federal income tax returns.

171.    HSH is paid to individuals typically hired to perform household work, and these individuals are considered employees of the person for whom they perform the household work. The individual receiving the income may be paid in cash or non-cash benefits, on an hourly, weekly, or monthly basis, for jobs such as babysitting, house cleaning, yard work, health care, or driving. "HSH income, which is income earned from

working in someone else's home, is not very commonly reported." *United States v. Barber*, 591 F. App'x 809, 813 (11th Cir. 2014) (per curiam).

172.    Williams adds fictitious HSH income to customers' federal income tax returns to increase their earned income.

173.    By increasing income, Williams then claims a false Earned Income Tax Credit ("EITC") on customers' tax returns.

174.    The EITC is a refundable tax credit available to certain low-income working people. The amount of the credit is based on the taxpayer's income, filing status, and claimed number of dependents. Because the EITC is a refundable credit, claiming an EITC can, in certain circumstances, reduce a taxpayer's federal tax liability below zero, entitling the taxpayer to a payment from the U.S. Treasury.

175.    Due to the method used to calculate the EITC, for certain income ranges, individuals with higher earned income are entitled to a larger credit than those with lower income.

**<u>Customer 10</u>**

176.    Customer 10 scheduled federal income tax preparation appointments with Williams through D&M's "schedulicity" website.

177.    On Customer 10's 2019 federal income tax return, Williams falsely reported that Customer 10 earned $16,000 in HSH income.

178.    Customer 10 did not perform any household work in 2019.

179.    Customer 10 does not know why Williams falsely reported that she received HSH income on her 2019 federal income tax return.

25

180.   The fabricated HSH income increased Customer 10's earned income for 2019 and resulted in Williams falsely claiming a $5,755 EITC on the tax return.

181.   By falsely claiming a $5,755 EITC, Williams claimed a bogus refund of $8,390 on Customer 10's 2019 federal income tax return.

182.   On Customer 10's 2020 federal income tax return, Williams falsely reported that Customer 10 earned $18,500 in HSH income.

183.   Customer 10 did not perform any household work in 2020.

184.   Customer 10 does not know why Williams falsely reported that she received HSH income on her 2020 federal income tax return.

185.   The fabricated HSH income increased Customer 10's earned income for 2020 and resulted in Williams falsely claiming a $5,889 EITC on the tax return.

186.   By falsely claiming a $5,889 EITC, Williams claimed a bogus refund of $8,437 on Customer 10's 2020 federal income tax return.

**Customer 11**

187.   On Customer 11's 2019 tax return, Williams falsely reported that Customer 11 earned $5,500 in HSH income.

188.   Customer 11 did not perform any household work in 2019 and does not know why Williams falsely reported that he received HSH income.

189.   The fabricated HSH income increased Customer 11's earned income for 2019, and Williams thereby falsely claimed a $529 EITC on the tax return.

190.   By falsely claiming a $529 EITC, Williams claimed a bogus refund of $676 on Customer 11's 2019 federal income tax return.

26

## Bogus Schedule A Deductions

191.    Williams also understates her customers' tax liabilities by overstating or fabricating deductions claimed on IRS Form Schedule A, "Itemized Deductions," filed with the tax return.

192.    Taxpayers use Schedule A to itemize deductions if their qualified deductions exceed the standard deduction. The deduction amount, whether standard or itemized, is subtracted from a taxpayer's AGI to calculate their taxable income. Thus, a higher deduction amount lowers an individual's taxable income and reduces the amount of tax they are required to pay. These practices fraudulently reduce the amount of taxable income the customers report and thus the amount of tax that they report they owe.

193.    Williams repeatedly inflates or fabricates deductions—charitable contributions, employee business expenses, qualified attorney fees, and personal property taxes—purportedly paid by her customers to increase their itemized deductions and thus lower their overall tax liability.

### Customer 3

194.    For example, on Customer 3's Schedule A, attached to her 2017 federal income tax return, Williams reported that Customer 3 donated $4,001 in cash and $5,000 in non-cash contributions to charity, reporting both as itemized deductions on Schedule A.

195.    Customer 3 did not make a charitable cash contribution of $4,001, did not make a charitable non-cash contribution of $5,000, did not provide Williams with documentation of the reported contributions, and did not tell Williams that she made such charitable contributions.

27

196.    On that same federal income tax return Williams also reported that Customer 3 paid $6,700 in attorney and accounting fees and incurred $2,771 in unreimbursed employee business expenses including for travel and parking.

197.    Customer 3 did not pay $6,700 in deductible attorney and accounting fees, did not incur unreimbursed employee business expenses, did not provide Williams with documentation of either reported expense, and does not know where Williams got that information.

198.    By falsely claiming the bogus deductions for charitable contributions, attorney and accounting fees, and unreimbursed employee business expenses on Schedule A of Customer 3's 2017 federal income tax return, Williams claimed a bogus tax refund of $3,963 on Customer 3's 2017 federal income tax return.

**Customer 7**

199.    Williams attached a Schedule A to Customer 7's 2017 federal income tax return, reporting that Customer 7 made non-cash charitable contributions of $8,500 and incurred $18,126 in unreimbursed business expenses.

200.    Customer 7 did not make non-cash charitable contributions, did not pay for unreimbursed employee business expenses, did not provide Williams with documentation of either reported expense, and does not know where Williams got that information.

201.    These false itemized deductions in the amount of $40,759 reduced Customer 7's 2017 reported taxable income.

202.    By falsely claiming $40,759 in itemized deductions, along with reporting a phony $11,632 business loss, discussed in paragraphs 124 through 128, *supra*, Williams claimed a bogus refund of $14,255 on Customer 7's 2017 federal income tax return.

203.    Williams attached a Schedule A to Customer 7's 2018 federal income tax return, reporting that Customer 7 made non-cash charitable contributions of $3,500.

204.    Customer 7 did not make non-cash charitable contributions, did not provide Williams with documentation of non-cash charitable contributions, and does not know where Williams got that information.

205.    These false itemized deductions in the amount of $25,934 reduced Customer 7's 2018 reported taxable income.

206.    By falsely claiming $25,934 in itemized deductions, along with reporting a phony $13,709 business loss, discussed in paragraphs 130 through 131, *supra*, Williams claimed a bogus refund of $8,398 on Customer 7's 2018 federal income tax return.

207.    Williams attached a Schedule A to Customer 7's 2019 federal income tax return, reporting that Customer 7 made non-cash charitable contributions of $1,000 and paid $2,700 in deductible personal property taxes.

208.    In 2019, Customer 7 paid $326.29 in personal property taxes, not $2,700.

209.    Customer 7 did not tell Williams that he paid $2,700 in personal property tax, did not give Williams documentation of $2,700 in property tax payments, and does not know where Williams got that information.

210.    Customer 7 did not make non-cash charitable contributions, did not provide Williams with documentation of non-cash charitable contributions, and does not know where Williams got that information.

211.    These false itemized deductions in the amount of $3,374 falsely increased Customer 7's itemized deductions and reduced Customer 7's 2019 reported taxable income.

212.    By falsely claiming a total of $32,565 in itemized deductions, along with reporting a phony $12,898 business loss, discussed in paragraphs 133 through 134, *supra*, Williams claimed a bogus refund of $9,591 on Customer 7's 2019 federal income tax return.

## Masking Involvement in these Schemes

213.    Section 6109 of the Internal Revenue Code (26 U.S.C.) requires return preparers to identify themselves on the returns they prepare for customers by including their PTIN on the return.

214.    Return preparers that do not identify themselves on returns they prepare for customers are subject to a penalty under 26 U.S.C. § 6695(b)–(c). The IRS refers to return preparers that do not identify themselves as "ghost preparers."

215.    Williams operates as a "ghost preparer" because she does not identify herself as the paid return preparer.

216.    Moreover, although Williams prepares federal income tax returns through D&M, she did not disclose this portion of her business in her articles of incorporation filed with the Missouri Secretary of State.

217.   Williams does not identify D&M on the federal income tax returns that she prepares.

218.   A court may enjoin a return preparer who continually engages in conduct subject to penalty under 26 U.S.C. § 6695 from preparing returns for others. *See* 26 U.S.C. § 7407.

219.   Because Williams operates as a "ghost preparer," it is extremely difficult for the IRS to identify and detect her illicit tax preparation activities.

220.   Once detected, it is difficult to quantify exactly how many tax returns Williams prepares and files for her customers.

### Failure to Maintain Copies of Tax Returns or a List of Customers and Produce it to the IRS on Demand

221.   Section 6107(b) of the Internal Revenue Code requires a tax return preparer to maintain either a copy of the tax returns prepared in the previous three years, or a list identifying the name and taxpayer identification number of all individuals or entities for whom the preparer has prepared a tax return in the previous three years. A tax return preparer is required to "make such copy or list available for inspection upon request" by the Secretary of the Treasury.

222.   In August 2020, the IRS requested that Williams provide such information.

223.   In violation of 26 U.S.C. § 6107(b), Williams refused to provide this information, as part of her actions to conceal her tax preparation practices.

**Harm to the United States**

224.    Williams's preparation of false and fraudulent tax returns harms the United States Treasury through lost tax revenue.

225.    For example, the IRS investigation determined that 73% of the 2019 federal income tax returns that Williams prepared resulted in an average $2,570 understatement of tax liability per return.

226.    Between 2017 and 2022, Williams prepared at least 1,598 federal income tax returns.

227.    Because Williams does not identify herself as the paid preparer on any of the federal income tax returns that she prepares for compensation, the total amount of lost revenue is unknown.

228.    Williams's unlawful practices further harm the United States because the IRS must devote its resources to investigating her activities.

229.    The IRS expends time and resources to identify the federal income tax returns Williams prepares, ascertain her customers' correct tax liabilities, recover any refunds erroneously issued, and collect any additional taxes and penalties.

230.    Consequently, and largely due to Williams's "ghost preparation" of tax returns, identifying and recovering all lost tax revenues resulting from Williams's activities may be impossible.

231.    Williams also harms her customers by charging fees for the preparation of accurate tax returns when instead she prepares tax returns with fabricated claims that

understate her customers' tax liabilities and claims refunds to which the customers are not entitled.

232.    In doing so, Williams causes her customers to incorrectly report their federal tax liabilities and underpay their taxes.

233.    As a result, customers now face large income tax debts and may be liable for penalties and interest.

234.    When the IRS conducts audits or examinations of customers and seeks repayment of these erroneous refunds, the customers are liable for the repayment of those refunds. Customers may also have to pay additional fees to other tax return preparers to file amended tax returns to correct the false or fraudulent tax returns that Williams prepared and filed.

235.    Williams's conduct also causes intangible harm to honest tax return preparers who unfairly lose business to Williams due to her willingness to break the law.

236.    Customers often have their returns prepared by Williams because she promises the maximum refund, which she delivers by fabricating claims and deductions on customers' tax returns.

237.    Finally, Williams's misconduct harms the public at large by undermining public confidence in the federal tax system and encouraging widespread violations of the internal revenue laws.

238.    The harm to the government and the public will continue, and likely increase, unless Williams is enjoined because—given the seriousness and pervasiveness of her

illegal conduct—without an injunction, Williams is likely to continue preparing false and fraudulent federal income tax returns for customers.

239.    An injunction will serve the public interest because it will put a stop to Williams's illegal conduct and the harm that it causes the United States and its citizens.

## Count I: Injunction under 26 U.S.C. § 7407

240.    Section 7407 of the Internal Revenue Code authorizes a district court to enjoin a tax return preparer from engaging in conduct subject to penalty under 26 U.S.C. § 6694 or § 6695. Additionally, if the court finds that a preparer has continually or repeatedly engaged in such conduct, and the court further finds that a narrower injunction (i.e., prohibiting only that specific enumerated conduct) would not be sufficient to prevent that person's interference with the proper administration of the internal revenue laws, the court may enjoin the person from further acting as a tax return preparer. The prohibited conduct justifying an injunction includes, among other things, the following:

    a. Engaging in conduct subject to penalty under 26 U.S.C. § 6694(a), which penalizes a return preparer who prepares a return or claim for refund that contains an unreasonable position and the return preparer knew (or reasonably should have known) of the position;

    b. Engaging in conduct subject to penalty under 26 U.S.C. § 6694(b), which among other conduct, penalizes a return preparer who recklessly or intentionally disregards IRS rules or regulations;

    c. Engaging in conduct subject to penalty under 26 U.S.C. § 6695(b), which penalizes a return preparer who fails to sign a return;

    d.  Engaging in conduct subject to penalty under 26 U.S.C. § 6695(c), which penalizes a return preparer who fails to furnish their individual PTIN as required; and

    e.  Engaging in any other fraudulent or deceptive conduct that substantially interferes with the proper administration of the internal revenue laws.

241.   Section 7701(a)(36) of the Internal Revenue Code defines "tax return preparer" as any person who prepares a tax return for compensation.

242.   As detailed above in paragraphs 6 through 212, Williams is a tax return preparer who repeatedly and continually prepares and/or submits returns or portions of returns with fictitious and unsubstantiated credits, deductions, and expenses.

243.   Accordingly, Williams prepares returns and claims for refund that substantially understate her customers' tax liability for tax on the return.

244.   Williams knows (or should know) of the unreasonable, unrealistic, frivolous, and fraudulent positions.

245.   Williams continually and repeatedly files false tax returns in violation of 26 U.S.C. § 6694(a), and she files tax returns with intentional or reckless disregard of the tax rules or regulations in violation of 26 U.S.C. § 6694(b).

246.   Williams has failed to obtain an individual PTIN from the IRS and thus fails to furnish this identifying number on any of the tax returns that she prepares in violation of 26 U.S.C. § 6695(c).

247.   Williams also fails to sign her name as the paid preparer for any of the federal income tax returns that she prepares for compensation in violation of 26 U.S.C. § 6695(b).

248.    Williams, through the actions described above, also recklessly or intentionally disregards IRS rules or regulations and engages in fraudulent or deceptive conduct that substantially interferes with the proper administration of the internal revenue laws.

249.    Williams's continual and repeated violations of 26 U.S.C. §§ 6694 and 6695 fall within 26 U.S.C. § 7407(b)(1)(A), and thus are subject to an injunction under 26 U.S.C. § 7407.

250.    Williams's continual and repeated fraudulent or deceptive conduct that substantially interferes with the proper administration of the internal revenue laws falls within 26 U.S.C. § 7407(b)(1)(D), and thus is subject to an injunction under 26 U.S.C. § 7407.

251.    Williams continues to violate the internal revenue laws even after she received notice of the IRS's investigation into her practices as a paid tax return preparer.

252.    If Williams is not enjoined from all tax preparation, she is likely to continue to prepare and file false and fraudulent tax returns that cause economic harm to the United States and require the United States to commit resources to the examination of Williams's customers' returns (exposing such customers to significant liabilities that include penalties and interest).

253.    Accordingly, Williams should be permanently barred from acting as a federal tax return preparer under 26 U.S.C. § 7407(b)(2).

## Count II: Injunction under 26 U.S.C. § 7408

254.   Section 7408 of the Internal Revenue Code authorizes a district court to enjoin any person from engaging in conduct subject to penalty under 26 U.S.C. § 6701 if injunctive relief is appropriate to prevent recurrence of such conduct.

255.   Section 6701(a) of the Internal Revenue Code penalizes any person who:

   a.   aids or assists in, procures, or advises with respect to the preparation or presentation of a federal tax return, refund claim, or other document;
   b.   knows (or has reason to believe) that such document will be used in connection with any material matter arising under the internal revenue laws; and
   c.   knows that if such document is so used, it will result in an understatement of another person's tax liability.

256.   Williams prepares federal tax returns.

257.   As described in paragraphs 6 through 220 above, Williams knows that the tax returns she prepares contain material matters arising under the internal revenue laws (e.g., business income and expenses, claims for itemized deductions and residential energy credits, etc.).

258.   Williams knowingly prepares federal tax returns that claim fictitious items that will result in an understatement of the liability for tax.

259.   Accordingly, Williams is subject to penalty under 26 U.S.C. § 6701(a). Injunctive relief is therefore appropriate under 26 U.S.C. § 7408.

## Count III: Injunction under 26 U.S.C. § 7402

260.    Section 7402(a) of the Internal Revenue Code authorizes a district court to issue injunctions as may be necessary or appropriate for the enforcement of the internal revenue laws.

261.    As discussed in paragraphs 6 through 223 above, Williams engages in conduct that substantially interferes with the enforcement of the internal revenue laws.

262.    Unless enjoined, Williams is likely to continue to engage in such unlawful conduct and interfere with the enforcement of the internal revenue laws.

263.    If Williams is not enjoined, the United States will suffer irreparable injury by wrongfully issuing federal tax refunds to individuals not entitled to receive them, many of which the United States may never discover or recover.

264.    The United States will also suffer irreparable injury because it will have to devote substantial resources to first identify and then audit Williams's customers to detect future falsified returns that understate customers' tax liabilities or overstate their refund.

265.    Enjoining Williams is in the public interest because an injunction, backed by the Court's contempt powers if needed, will stop Williams's illegal conduct and the harm it causes the United States.

266.    Accordingly, the Court should impose injunctive relief under 26 U.S.C. § 7402(a).

## **Relief Sought**

WHEREFORE, the United States prays for judgment on Counts I through III of the Complaint as follows:

A. That the Court find that Diane Shontae Williams and Dreams & Memories Professional Planning Services continually and repeatedly engage in conduct subject to penalty under 26 U.S.C. §§ 6694 and 6695, continually and repeatedly engage in other fraudulent or deceptive conduct that substantially interferes with the administration of the tax laws, and that a narrower injunction prohibiting only this specific misconduct would be insufficient;

B. That the Court find that a permanent injunction under 26 U.S.C. § 7407 is appropriate to bar Williams from acting as a federal tax return preparer;

C. That the Court find that Diane Shontae Williams and Dreams & Memories Professional Planning Services have engaged in conduct subject to penalty under 26 U.S.C. § 6701, and that injunctive relief under 26 U.S.C. § 7408 is appropriate to prevent a recurrence of that conduct;

D. That the Court find that Diane Shontae Williams and Dreams & Memories Professional Planning Services have engaged in conduct that substantially interferes with the enforcement of the internal revenue laws, and that injunctive relief is appropriate to prevent the recurrence of that conduct under the Court's inherent equity powers and 26 U.S.C. § 7402(a);

E. That the Court, under 26 U.S.C. §§ 7402, 7407, and 7408, enter a permanent injunction prohibiting Williams from:

    1. acting as federal tax return preparers or requesting, assisting in, or directing the preparation or filing of federal tax returns, amended returns, or other related documents or forms for any person or entity other than herself;

2. owning, operating, managing, working in, investing in, providing capital or loans to, receiving fees or remuneration from, controlling, licensing, consulting with, or franchising a tax return preparation business;

3. training, instructing, teaching, and creating or providing cheat sheets, memoranda, directions, instructions, or manuals, pertaining to the preparation of federal tax returns;

4. maintaining, assigning, holding, using, or obtaining a PTIN or an EFIN;

5. selling, transferring, assigning, disseminating, providing, or giving to any individual or entity a list of customers, or any other personal identifying information of customers of Williams or anyone acting on her behalf;

6. engaging in any other activity subject to penalty under 26 U.S.C. §§ 6694, 6695, or 6701; and

7. engaging in any conduct that substantially interferes with the proper administration and enforcement of the internal revenue laws.

F.  That the Court enter an order requiring Williams, at her own expense, to:

1. immediately and permanently stop all tax preparation business that Williams does through any entity;

2. send, within 30 days of the Court's order, by email or certified mail, a copy of the final injunction entered against her in this action to each person for whom she prepared federal income tax returns or any other federal tax forms after January 1, 2019;

40

3. turn over to the United States copies of all returns and tax forms that Williams prepared after January 1, 2019;

4. produce to counsel for the United States, within 30 days of the Court's order, a list that identifies—by name, social security number, address, email address, telephone number, and tax period(s)—all persons for whom Williams prepared federal income tax returns beginning on or after January 1, 2019;

5. prominently post a copy of the injunction in Williams's places of business where she prepared tax returns;

6. post on all social media accounts and websites used to advertise Williams's tax preparation services, a statement that she has been enjoined from the preparation of tax returns and a hyperlink to any press release regarding the injunction that the Department of Justice may issue;

7. file a sworn statement with the Court evidencing Williams's compliance with the foregoing directives within 45 days of entry of the final injunction in this action; and

8. keep records of Williams's compliance with the foregoing directives, which may be produced to the Court, if requested, or the United States pursuant to paragraph G, *infra*;

G. That the Court enter an order allowing the United States to monitor Williams's compliance with the injunction and to engage in post-judgment discovery in accordance with the Federal Rules of Civil Procedure; and

41

H.  That the Court grant the United States such other and further relief as the Court

deems appropriate.


DATED: July 6, 2023                    SAYLER A. FLEMING
                                       United States Attorney

                                       DAVID A. HUBBERT
                                       Deputy Assistant Attorney General

                                        *s/ Elizabeth A. Kirby*
                                       ELIZABETH A. KIRBY
                                       Trial Attorney, Tax Division
                                       U.S. Department of Justice
                                       P.O. Box 7238, Ben Franklin Station
                                       Washington, D.C.  20044
                                       Telephone: (202) 305-8656
                                       Fax: (202) 514-6770
                                       elizabeth.a.kirby@usdoj.gov